UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JACQUELINE M. PHELPS                                                                              PLAINTIFF

v.                                                                                                          3:11-CV-00622-CRS

BALFOUR, COMMEMORATIVE BRANDS
INC., AMERICAN ACHIEVEMENT CORP.,
AMY KUHN, JOE DRURRY, TAYLOR SIMPSON,
STEVE VINCE, and TERRY RANGEL                                                          DEFENDANTS

**MEMORANDUM OPINION**

This case is before the court on two motions to dismiss the Plaintiff's Complaint in which she asserts claims against the Defendants for (1) Family Medical Leave Act ("FMLA") discrimination and interference; (2) Americans with Disabilities Amendments Act ("ADAAA") disability discrimination and failure to accommodate; and (3) an Employee Retirement Income Security Act ("ERISA") violation (DN 1). Phelps requests injunctive relief, compensatory damages, liquidated damages under the FMLA, punitive damages, and she contends that attorneys' fees, costs, and expenses are warranted (DN 1).

Defendants, Commemorative Brands Inc. ("CBI") (DN 6), Amy Kuhn, Joe Drurry, Taylor Simpson, Steve Vince, and Terry Rangel ("Individual Defendants") (DN 7) request dismissal under Fed. R. Civ. P. 12(b)(6). The Defendants allege that Phelps's Complaint fails to identify factual allegations to state a claim that is plausible on its face. The Individual Defendants also seek to dismiss Phelps's ADAAA claims pursuant to Fed. R. Civ. P. 12(b)(1), alleging that Phelps failed to exhaust her administrative remedies as to them.

## BACKGROUND

Phelps's Complaint alleges that CBI hired her in August 1997, and that (DN 1):

(1)	In January 2009, Phelps complained about her workplace being cold. She was sick for twelve days and filed for both short-term disability and FMLA leave.

(2)	March 2-17, 2009, Phelps was sick and then hospitalized for ten days. Phelps contacted Amy Kuhn in CBI's Human Resources Department, an Individual Defendant, regarding her unpaid short-term disability pay from January 2009.

(3)	On March 17, 2009, Phelps called Terry Rangel, Director of CBI's Human Resources Department and an Individual Defendant, to inquire about her unpaid short-term disability. Rangel explained that Phelps's leave was under investigation because she was the only employee to get sick. Though later CBI did, in fact, pay Phelps's January 2009 short-term disability payment.

(6)	In mid-April 2009, Phelps requested two days leave for doctor's appointments from her supervisor, Steve Vince, another Individual Defendant. Vince granted the request but also suggested that Phelps quit and draw disability because of her health issues and continuing illness.

(7)	In late April 2009, Phelps requested three weeks vacation leave to begin in early May 2009. Vince denied the request because of Phelps's recent sick leave but later approved the request after Phelps complained to Vince's supervisor, Joe Drurry, the Plant Manager and Individual Defendant.

(8)	In May 2009, during Phelps's three-week vacation, she was hospitalized for appendicitis and applied for short-term disability a second time.

- 3 -

    (9)      On June 15, 2009 and again on June 26, 2009—after her three-week vacation leave expired—Phelps was hospitalized for a surgery and another procedure.

    (10)    On June 29, 2009, Phelps received a letter from Rangel, the Human Resources Director, stating that Phelps exhausted her FMLA leave on June 15, 2009 and that she was being placed on a six-month leave of absence.

In July 2009, while unable to work, Phelps contacted a CBI Human Resources representative regarding what days CBI counted toward her FMLA leave. The representative explained that Phelps's FMLA period ran from June to June to coincide with her hiring date. Phelps then contacted Amy Kuhn who also explained that Phelps's FMLA coverage period ran from June to June. Phelps responded that she was hired in August, not June, and asserted that her FMLA period should run from August to August to coincide with her hiring date.

Phelps informed Kuhn that she had not received paperwork regarding long-term disability leave, nor had she been compensated for her short-term disability leave from May 2009. Kuhn instructed Phelps to notify her when Phelps was able to return to work. Then, on July 17, 2009, when Phelps was released from her doctor's supervision she informed Kuhn that she could return to work on July 22, 2009. On July 20, 2009, two days before Phelps could return to work, Kuhn told Phelps that her position had been eliminated and she need not return to work.

Phelps inquired about why she, instead of the other four employees in her department, was being eliminated. Kuhn did not explain or clarify Phelps's inquiries or address her complaints. When Phelps's request to return to work was denied she asked if Kuhn: (1) could place Phelps on furlough through August or September, which CBI had done before; or (2) could

transfer Phelps to the night shift or another department (DN 1). Kuhn denied these requests and suggested that Phelps file for unemployment benefits.

## DISCUSSION

Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a short plain statement of the claims showing that the pleader is entitled to relief. The pleading standard in Rule 8(a)(2) does not require detailed factual allegations, but "demands more than an unadorned, the defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2008) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955)).

To withstand a Rule 12(b)(6) motion to dismiss for failure to state a claim, it is not enough that the complaint contains "facts that are merely consistent with a defendant's liability," rather, a plaintiff must allege "facts – not legal conclusions or bald assertions – supporting a 'plausible' claim for relief." *Id.* at 687 (*quoting Twombly*, 550 U.S. at 557)). A complaint that offers legal conclusions or a recitation of the elements of a cause of action will not meet this pleading standard. *See id*. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). The court must take all of the factual allegations in the complaint as true, but is "not bound to accept as a true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown the pleader is entitled to relief. *Id*. at 677-78.

### I.     Discrimination and Interference Under the FMLA

Under the FMLA, a qualifying employee who is unable to perform her job functions due to her or a close family member's serious health condition is eligible to take up to twelve-weeks leave without pay during any twelve-month period. There are two recovery theories available under the FMLA: the interference theory, and the retaliation theory. *Wysong v. Dow Chem. Co.*, 503 F. 3d 441, 446 (6th Cir. 2007) (*citing Edgar v. JAC Prods. Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). Employees may not be "discharg[ed] or in any other manner discriminat[ed] against" in retaliation for asserting their rights to FMLA leave. 29 U.S.C. § 2615(a)(2). Also, Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions. 29 C.F.R. § 825.220(c).

Phelps contends that CBI terminated her prior to the end of her statutory twelve-week leave under the FMLA and subjected her to discrimination and retaliation for taking medical leave "willfully, wantonly, maliciously and in reckless disregard of [her] rights as protected by the FMLA." (DN 1).

### A. FMLA Statute of Limitations

First, CBI responds that Phelps's claim is barred under the FMLA's statute of limitations (DN 6-1). Under the FMLA, an employee generally has two years within which to file an FMLA claim. However, where an employee can show a "willful" violation, an extended three-year statute of limitations is available. 29 U.S.C. § 2617(c). The Sixth Circuit has held that a "willful" violation is shown when an employer "acts with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements; therefore, the determination of

willfulness involves a factual question." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004); *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-135 (1988).

Here, Phelps was terminated July 21, 2009 and she did not file an FMLA claim until November 7, 2011 (DN 1). Thus, her FMLA claims are time-barred except to the extent that she can show a willful violation. Phelps's Complaint alleges that the Defendant "acted intentionally, willfully, wantonly, maliciously and in reckless disregard of Plaintiff's rights as protected by the FMLA," though Phelps acknowledges that she was provided FMLA leave and granted additional leave after her FMLA leave had been exhausted (DN 1 ¶¶ 38, 72). The Sixth Circuit has held that with regard to FMLA claims, a plaintiff's factual allegations must be taken as true for purposes of deciding a Rule 12(b)(6) motion to dismiss and that "a plaintiff may withstand such a motion merely having alleged that the FMLA violation was willful." *Ricco*, 377 F.3d at 603. Thus, Phelps's FMLA claims have not been shown to be time-barred at this juncture.

### B. Discrimination Under the FMLA

To establish a prima facie case of discrimination under the FMLA, Phelps must show: (1) that she engaged in a statutorily protected activity—such as notifying her employer of her intent to take FMLA leave; (2) that she suffered an adverse employment action; and (3) that there was a minimal causal connection between the adverse employment action and the protected activity—which includes indirect evidence of the causal connection such as the proximity in time between a request for FMLA leave and subsequent discharge. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

The Sixth Circuit has held that establishing a prima facie case of discriminatory intent is "not intended to be an onerous one." *Id.* at 315; *see Bryson v. Regis Corp.*, 498 F.3d 561, 570

(6th Cir. 2007). FMLA retaliation (discrimination) claims are evaluated under a burden shifting framework, the plaintiff's initial burden is merely to present evidence from which a reasonable jury could conclude that the plaintiff suffered an adverse employment action under the circumstances which give rise to an inference of unlawful discrimination." *Id.*

CBI argues that Phelps failed to make factual allegations establishing a causal connection between her FMLA activity and her termination (DN 6-1). Here, Phelps does, in fact, make out a prima facie case of FMLA discrimination as she need only present some evidence of "circumstances which give rise to an inference of unlawful discrimination." *Bell v. Prefix, Inc.*, 321 F. App'x 423, 426 (6th Cir. 2009) (*citing Bryson*, 498 F.3d at 570)). Phelps's Complaint alleges (1) that she was placed on FMLA leave, thereby engaging in statutorily protected activity; (2) that she was terminated upon attempting to return from leave, thereby suffering an adverse employment action; and (3) that a causal connection is shown via temporal proximity. *See Skrjanc*, 272 F.3d at 314; *see Chandler v. Specialty Tire of Am.*, 283 F.3d 818, 826 (6th Cir. 2002). Thus, we will deny Defendants' motion to dismiss Phelps's FMLA discrimination claim.

### C. Interference Under the FMLA

The FMLA prohibits qualifying employers from interfering with, restraining, or denying the exercise of or the attempt to exercise, any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail under the FMLA interference theory, Phelps must establish by a preponderance of the evidence: (1) that she is an "eligible employee;" (2) that CBI is an "employer;" (3) that Phelps was entitled to leave under the FMLA; (4) that Phelps gave CBI notice of her intention to take leave; and (5) that CBI denied FMLA benefits to which she was entitled. 29 U.S.C. § 2611-12; *Cavin v. Honda of Am. Mfg. Inc.*, 346 F.3d 713, 719 (6th Cir.

2003). The fifth element of the interference claim has also been rephrased by the Sixth Circuit, to require a plaintiff to show that the employer "somehow used the leave against her in an unlawful manner, as provided in either the statute or regulations." *Wysong*, 503 F. 3d at 447.

Phelps's Complaint alleges: (1) that CBI unlawfully interfered with Phelps's rights under the FMLA by misrepresenting the statutory leave period and informing Phelps of two different methods for calculating her statutory FMLA leave; (2) that CBI violated the FMLA by encouraging Phelps to quickly complete her short-term disability paperwork without fully or adequately informing her of her rights and obligations under the FMLA; and (3) that CBI acted intentionally, wantonly, maliciously, willfully and in reckless disregard of Phelps's rights as protected by the FMLA (DN 1).

CBI argues that Phelps does not allege the basic elements of the interference claim—that she was an "eligible employee" or that she was entitled to additional FMLA leave at the time of her discharge. In response, Phelps contends that her Complaint "indicates correspondence with Defendants that would otherwise establish that she was an eligible employee under the FMLA" and that CBI "admitted to violating the FMLA." (DN 20).

Here, Phelps's FMLA interference claim fails under Rule 12(b)(6). Phelps does not allege that she was entitled to additional FMLA leave or that she still had available FMLA leave at the time of her discharge. *See Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008) (holding that because a plaintiff did not adequately plead a violation of the FMLA notice requirements the district court was correct in granting the defendant's motion to dismiss). Thus, we will grant the Defendants' motion to dismiss the FMLA interference claim.

## II. Disability Discrimination and Failure to Accommodate Under the ADAAA

### A. Disability Discrimination Under the ADAAA

The ADAAA provides that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to hiring, advancement, discharge, compensation, job training and other terms and conditions of employment. 42 U.S.C. § 12112(a). A plaintiff can prove disability discrimination by "direct evidence that the employer relied on [plaintiff's] disability in making an adverse employment decision, or if the employer admits to reliance on the handicap." *Hendrick v. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004) (*citing Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996)).

Absent direct evidence of discrimination, the plaintiff must establish a prima facie case of discrimination. *Id.; Shoemaker v. E.I. DuPont de Nemours & Co.*, 405 F. App'x 16, 18 (6th Cir. 2010). This burden "is not onerous," a plaintiff's burden "is merely to present evidence from which a reasonable jury could conclude that [she] suffered an adverse employment action 'under circumstances which give rise to an inference of unlawful discrimination.'" *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007) (*quoting Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1918)).

A plaintiff must show that she is "disabled" to establish a prima facie case.[1] The ADAAA defines a "disability" as a physical or mental impairment that substantially limits one or more of

---

[1] More specifically, to establish a prima facie case, the plaintiff must show: (1) that she is "disabled;" (2) that she was "otherwise qualified" for the position, with or without reasonable accommodation; (3) that she suffered an adverse employment action; (4) that the employer knew or had reason to know of her disability; and (5) that after her rejection or termination, the employer sought other applicants or the disabled individual was replaced. *Hendrick*, 355 F.3d at 453 (*citing Monette*, 90 F.3d at 1186-87)). The fifth element is also satisfied by showing that similarly situated employees were treated more favorably. *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).

the major life activities of an individual; a record of such impairment; or being regarded as having an impairment. 42 U.S.C. § 12102(2)(A).

Here, Phelps's disability discrimination claim alleges that she suffered from "numerous medical conditions (including Arthritis, Bursitis, Obesity, Tendonitis, Diabetes, Anemia, and Atria Flutter) and was disabled within the meaning of the ADAAA." (DN 1).

Although Phelps listed her medical conditions and contends that she was often sick and hospitalized, her Complaint made no factual statements as to the nature of her disability, nor does she show that her impairment substantially limits one or more of the major life activities to demonstrate that she is disabled under the ADAAA. Thus, Phelps fails to established a prima facie for discrimination and we will grant Defendants' motion to dismiss the ADAAA discrimination claim.

### B. Failure to Accommodate Under the ADAAA

Phelps contends that CBI "violated the ADAAA by failing to engage in an interactive process with her to identify reasonable alternatives." (DN 1). The ADAAA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). This claim requires the plaintiff to show that the she is disabled and that she is otherwise qualified for the position despite her disability—with an essential job requirement eliminated, or with a proposed reasonable accommodation. *Hendrick*, 355 F.3d at 452. To determine the appropriate reasonable accommodation for an employee, an employer may have to initiate an interactive process with the employee. *See Kleiber v. Honda of Am. Mfg. Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).

Here, Phelps contends that she requested an accommodation—she specifically requested to be furloughed, to transfer shifts, or to transfer departments (DN 1). Although Rule 8(a)(2) does not require detailed factual allegations, Phelps has not alleged that she is "disabled" to satisfy the definition under the ADAAA. *See Stokes v. Hamilton Cnty. Tenn.*, 113 F. App'x 680, 683-84 (6th Cir. 2004); *see Lane v. Bell Cnty. Bd. of Educ.*, 72 F. App'x 389, 396-97 (6th Cir. 2003). Thus, we will grant Defendants' motion to dismiss the ADAAA accommodation claim.

### III.  ERISA Violation

Phelps contends that CBI violated ERISA because it either interfered with her protected ERISA rights or because Phelps's use of ERISA benefits was a motivating factor in CBI's decision to terminate her (DN 1). Under ERISA:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140. To state a claim under ERISA, the plaintiff can show either that "an employer had a specific intent to violate ERISA." Or, "in the absence of direct evidence of discriminatory intent, the plaintiff can state a prima facie case by showing: (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled." *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997).[2]

As a threshold matter, Phelps alleges that she was a participant in an ERISA-covered health care plan sponsored by CBI, that she was hospitalized and underwent several surgeries

---

[2] ERISA § 510 protects against two types of conduct: (1) adverse action taken because the participant availed herself of an ERISA right—an "exercise" or "retaliation" violation; or (2) interference with the attainment of a right under ERISA— an "interference" violation. *Coomer v. Bethesda Hosp. Inc.*, 370 F.3d 499, 506 (6th Cir. 2004); *Bingham v. Proctor & Gamble Co.*, No.04-3584, 2005 WL 1579703, *7 (July 6, 2005).

during her coverage period, and that CBI engaged in prohibited conduct (DN 1). Phelps also contends (1) that CBI acknowledged that Phelps was being investigated because "she was the only employee who kept getting sick;" (2) that CBI suggested that Phelps "go ahead and quit and draw disability, because of her health problems and that she kept getting sick;" and (3) that CBI initially denied Phelps vacation leave because she had missed work due to being sick (DN 1).

In an ERISA interference claim, the plaintiff "need not prove that the employer's sole purpose . . . was to interfere with [plaintiff's] entitlement to benefits," but the plaintiff must "either prove that the interference was a motivating factor in the employer's actions or prove that the employer's proffered [nondiscriminatory] reason is unworthy of credence." *Ameritech*, 129 F.3d at 865 (*quoting Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1411 (6th Cir. 1996)).

Here, Phelps makes a prima facie case for ERISA interference because she alleges that her supervisor encouraged her to resign and then CBI subsequently terminated her when she did not resign. A prima facie case that an employer had the specific intent of avoiding ERISA liability, requires only that a plaintiff offer proof that an employer encouraged her to resign in order to prevent her from making a claim for employee benefits. *Bingham,* 2005 WL 1579703 at *7; *see Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 452 (6th Cir. 1999). Thus, we will deny Defendants' motion to dismiss the ERISA claim.

### IV.  Individual Defendants' Motion to Dismiss

#### A.  Failure to Exhaust Administrative Remedies Under the ADAAA

The Individual Defendants move to dismiss Phelps's ADAAA claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as to them. The Defendants argue that Phelps's discrimination claim with the Equal Employment Opportunity Commission ("EEOC")

was filed against CBI, and that Phelps's failure to include the Individual Defendants in the administrative charge precludes subject matter jurisdiction in this court. *See Reese v. Indus. Comm'n of Ohio*, 3 F. App'x 340, 342 (6th Cir. 2011) (unpublished) (holding that failing to file an EEOC claim alleging that the defendants discriminated against him precludes subject matter jurisdiction over ADA claims in federal court).

Generally, failure to name a party in the EEOC complaint precludes later civil action against them. *EEOC v. MacMilan Bloedel Containers, Inc.*, 503 F.2d 1086, 1092 (6th Cir. 1974). The purpose of this requirement is to give notice and an opportunity to participate in EEOC proceedings. *Id.* However, this requirement is not meant to be a stumbling block, and complainants often file charges with the EEOC without counsel; thus, charges are construed liberally. *Jones v. Sumser Retirement Village*, 209 F.3d 851, 853 (6th Cir. 2000). A complainant need not "conform to legal technicalities" or use "exact wording which might be required in a judicial pleading." *Id.* This liberal rule requires that the ultimate "claim must grow out of the [EEOC] investigation or the facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim." *Id.*

Here, Phelps named Balfour in her EEOC employment discrimination claim but she has not shown that the Individual Defendants were named parties in that claim. While we do not require that Phelps's EEOC claim conform to legal technicalities or use the precise wording we would expect from legal counsel, by the same token, we will not read into her EEOC complaint persons who she did not specify in order to hold them at risk of personal liability here. To hold otherwise would allow a vague EEOC filing to be fleshed out with specific defendants in subsequent litigation. The EEOC's handling of the vague complaint would become a mere

formality and without investigative substance. We do not think it unreasonable to require an EEOC complainant to at least identify those who she complains against. Thus, we will grant the Individual Defendants' motion to dismiss the ADAAA clams.

### B.  Motion to Dismiss Phelps's FMLA and ERISA claims

First, regarding the FMLA discrimination claim, we will not grant the Individual Defendants' motion to dismiss because the Defendants fail to support their contention that they are not "employers" under the FMLA (DN 7-1). Second, we need not address the Individual Defendants' motion to dismiss Phelps's FMLA interference claim because it will be dismissed under Fed. R. Civ. P. 12(b)(6) for the reasons stated previously. However, the Defendants' assertion that they are not "employers" under the FMLA would also fail as to the FMLA interference claim.

Phelps's ERISA claim will not be dismissed under 12(b)(6) for the reasons stated previously. Further, the Individual Defendants' fail to cite any authority showing that they should not be individually liable (DN 7-1). Thus, we will not grant the Individual Defendant's motion to dismiss the ERISA claim.

A separate order will be entered in accordance with this opinion.

February 15, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**